IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMIL FAZLUTDINOV, | : | 1:21-cv-0427 |
| Petitioner, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| IMMIGRATION AND CUSTOMS | : | |
| ENFORCEMENT AGENCY, et al., | : | |
| Respondent. | : | |

# **MEMORANDUM**

**May 24, 2021**

Ramil Fazlutdinov ("Fazlutdinov" or "Petitioner"), presently a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), incarcerated at the Clinton County Correctional Facility, McElhattan, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 on March 9, 2021, seeking immediate release pending his removal to Russia. (Doc. 1).

For the reasons that follow, the Court will deny the petition without prejudice.

**I.     BACKGROUND**

Fazlutdinov is a native and citizen of Russia who was admitted to the United States at New York, New York on or about June 20, 2000, with a nonimmigrant

visitor's visa, B-2. (Doc. 6-1, p. 6). His status was adjusted to lawful permanent resident on August 17, 2015. (*Id.*).

On September 12, 2019, he was convicted of Conspiracy to Commit Bank Fraud and Wire Fraud in United States District Court, for the Southern District of New York criminal case 18-cr-0259. (*Id.*). The loss to the victims exceeded $10,000 in United States currency. (*Id.*). He received a sentence of thirty-three months incarceration. (*Id.*). On December 18, 2019, while incarcerated, ICE's Criminal Alien Program[1] encountered him. This resulted in him being served with a June 24, 2020, Notice to Appear charging him as removable from the United States pursuant to 237(a)(2)(A)(iii), as an alien present who at any time after admission has been convicted of an aggravated felony as defined in INA § 101(a)(43)(U) relating to an attempt or conspiracy to commit an offense described in INA § 101(a)(43)(M)(i), relating to fraud offenses which the loss exceeds $10,000. (*Id.* at p. 11, ¶ 3).

Fazlutdinov entered ICE custody on July 1, 2020, upon the expiration of his criminal sentence. (*Id.* at ¶ 2). On August 10, 2020, an immigration judge ("IJ") ordered him removed to Russia. (*Id.* at p. 12, ¶ 4; pp. 15-17). The removal order became final when he waived his right to appeal. (*Id.* at p. 16). His custody status

---

[1] "The Criminal Alien Program (CAP) provides ICE-wide direction and support in the biometric and biographic identification, arrest, and removal of priority aliens who are incarcerated within federal, state, and local prisons and jails, as well as at-large criminal aliens that have circumvented identification." https://www.ice.gov/identify-and-arrest/criminal-alien-program

was reviewed on February 8, 2021, in accordance with applicable regulations in 8 C.F.R. Part 241, and it was determined that continued detention was warranted, as he posed a significant public safety concern due to the seriousness of his criminal record. (*Id.* at p. 12, ¶ 8). On March 1, 2021, the IJ denied his request for a custody redetermination pursuant to *Guerrero-Sanchez* finding that he was a flight risk and a danger to the community. (*Id.* at ¶ 9; *Id.* at pp. 18, 19).

On August 18, 2020, a travel document request packet was sent to Russia; the request is still pending. (*Id.* at p. 12, ¶ 5). ICE's Enforcement and Removal Operations ("ERO") has a copy of Fazlutdinov's expired passport. (*Id.*) The Embassy of Russia has regularly cooperated with ICE's ERO and issues travel documents on a regular basis. (*Id.* ¶ 6). It is anticipated that his removal from the United States is imminent upon his citizenship being established. (*Id.* at ¶¶ 7, 10).

## II. DISCUSSION

A prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3); *see also Maleng v. Cook*, 490 U.S. 488, 490 (1989). Because Fazlutdinov is currently detained within the jurisdiction of this Court, and asserts that his continued detention violates due process, this Court has jurisdiction over his § 2241 petition. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Generally, 8 U.S.C. § 1226 governs pre-removal

order detention and 8 U.S.C. § 1231 governs post-removal order detention. *Samba v. Lowe*, No. 3:18-cv-662, 2020 WL 599839, at *2 (M.D. Pa. Feb. 7, 2020). Detention, release, and removal of aliens ordered removed, is governed by the provisions of 8 U.S.C. § 1231 and applies to the detention of aliens subject to a final order of removal, sans a stay of removal. *See* 8 U.S.C. § 1231; *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 213-15 (3d Cir. 2018).

Section 1231(a)(1)(A) provides that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During this ninety-day period, "the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found ... deportable under section 1227(a)(2)." *See id.* § 1231(a)(2). After the expiration of the mandatory ninety-day period, the alien may be held in continued detention, or may be released under supervision. *See id.* § 1231(a)(3), (6). Further, the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*

4

at 699. To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention." *Id.* at 701.

Initially, Fazlutdinov has not met his burden of demonstrating that his removal is not likely to occur in the reasonably foreseeable future. He asserts that removal is unlikely because ICE "does not have his passport or any other valid travel document and cannot provide any approximate date for his removal." (Doc. 7, p. 2). However, ICE has a copy of his expired passport and a travel document request packet has been sent to Russia. Although the request is still pending, ICE represents that the Embassy of Russia has regularly cooperated with such requests and issues travel documents "on a regular basis." (Doc. 6-1, p. 12, ¶ 6). Further, ICE anticipates "that petitioner's removal from the United States in imminent upon his citizenship being established." (*Id.* at ¶ 7).

At this juncture, there simply is no evidence in support of Fazlutdinov's assertion that his removal is unlikely to occur in the reasonably foreseeable future. *See Nicole S. A. B.*, 2019 WL 6606864, at *3 (denying relief under *Zadvydas* because she "merely allege[d], in conclusory fashion, that her detention has been unreasonably prolonged"); *Manuel H.*, 2019 WL 2710676, at *3 (denying relief under *Zadvydas* because he "provide[d] no evidence in support of his assertion that there is no significant likelihood of his removal in the reasonably foreseeable future"); *DonMartin v. Lowe*, No. 1:17-cv-1766, 2017 WL 5990114, at *2 (M.D.

5

Pa. Dec. 4, 2017) (denying relief following eight months of detention because argument that "removal [was] unlikely because it ha[d] not yet occurred" was insufficient to meet the *Zadvydas* standard under).

To further implement *Zadvydas* protections, the United States Court of Appeals for the Third Circuit has concluded that "an alien detained under § 1231(a)(6) is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody." *See Guerrero-Sanchez v. Warden York Cty. Prison,* 905 F.3d 208, 226 (3d Cir. 2018). The alien "is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." *See id.* at 224 (*quoting Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011)). "The Government must meet its burden in such bond hearings by clear and convincing evidence." *Id.* at 224 n.12. Fazlutdinov received a *Guerrero-Sanchez* hearing on March 1, 2001; bond was denied based upon his flight risk and the danger posed to persons or property. Thus, because it appears that his removal is imminent, and ICE has afforded him a bond hearing pursuant to *Guerrero-Sanchez*, he has received all required due process protection.

## III. CONCLUSION

For the foregoing reasons, Fazlutdinov's petition for writ of habeas corpus will be denied without prejudice.

A separate Order shall issue.

6